**UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION**

| | |
|---|---|
| In re<br><br>TOOLS-4-HIRE, INC. et al.,<br><br>　　　　　　　　　　Debtors<br><br>TOOLS-4-HIRE, INC.,<br><br>　　　　　　　　　　Plaintiff<br><br>v.<br><br>WELLS FARGO CONSTRUCTION,<br>　A DIVISION OF WELLS FARGO<br>　EQUIPMENT FINANCE, INC.,<br><br>　　　　　　　　　　Defendant | Chapter 11<br>Case No. 06-14004-FJB<br><br><br><br><br>Adversary Proceeding<br>No. 07-1455 |

**MEMORANDUM OF DECISION AND ORDER
<u>ON CROSS MOTIONS FOR SUMMARY JUDGMENT</u>**

　　　By its complaint in this adversary proceeding, the reorganized debtor, Tools-4-Hire, Inc. ("Tools"),[1] seeks to recover two things: (i) payments totaling $256,580.71 that it made to the defendant, Wells Fargo Construction, a division of Wells Fargo Equipment Finance, Inc. ("Wells Fargo"), during its chapter 11 case and prior to confirmation of its chapter 11 plan as "adequate protection" payments; and (ii) an additional $87,130.00 that Wells Fargo received upon liquidation of collateral that, by the terms of its confirmed plan, Tools was required to and did turnover to Wells Fargo. Tools argues that it is entitled to return of the adequate protection

---

　　　[1] At the time of its bankruptcy filing, the debtor plaintiff was known as Tools-4-Hire, Inc. After confirmation of its plan of reorganization, the same entity, now the reorganized debtor, changed its name to Equipment-4-Rent, Inc. After the name change, and for reasons unknown to the court, the same entity nonetheless commenced this adversary proceeding under the name Tools-4-Hire, Inc. For simplicity, the Court refers to the plaintiff throughout as simply "Tools."

payments because Wells Fargo's collateral suffered no diminution in value during the case; and Tools further argues that it is entitled to return of both amounts because these sums together represent the amount by which the total proceeds of Wells Fargo's collateral exceed the value of Wells Fargo's collateral at the commencement of this case.  In response, Wells Fargo argues (among other things) that these claims are precluded by the confirmed plan.  The adversary proceeding is before the court on cross motions for summary judgment.  On the basis of res judicata, as explained below, the court holds that Tools' claims are precluded by the order confirming the plan of reorganization, which of necessity determined what Wells Fargo was entitled to receive for the value of its secured claim as of the date of confirmation.

**Facts and Procedural History**

The facts and procedural history are largely intertwined and accordingly will be stated here together.  Except where noted, the facts are uncontroverted.

On November 1, 2006 (the "Petition Date"), Tools filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code, thereby commencing the present bankruptcy case. Prior to its bankruptcy filing, Tools was in the business of leasing construction machinery and equipment to its contractor and subcontractor customers.  Prior to the Petition Date, Wells Fargo's predecessor in interest, CIT Group/Equipment Financing, Inc. ("CIT"), had financed Tools' acquisition of approximately thirty pieces of construction equipment (the "Wells Fargo Equipment").  Wells Fargo is the successor in interest to CIT.  (CIT shall throughout be referred to as Wells Fargo.)  As of the Petition Date, Wells Fargo held a properly perfected security interest in the Wells Fargo Equipment then in the possession of Tools (the "Equipment"), which excluded certain pieces of equipment sold prepetition.  In addition, Wells Fargo held a properly perfected security interest in all accounts, contract rights, chattel paper, documents, general intangibles and instruments arising from the sale, lease, or rental of the Equipment, and all proceeds thereof (with the Equipment, the "Wells Fargo Collateral").

2

Prior to the Petition Date, and as a result of financial mismanagement issues that had by then arisen, Tools and its financial advisors implemented an "interim vendor program" ("IVP") through which Tools agreed to pay each equipment lender a portion of the proceeds received by Tools from the rental of such lender's collateral to third-parties during any given month. Wells Fargo received payments from Tools under the IVP, which payments represented a portion of the net rental stream earned by Tools from its leasing of the Wells Fargo Equipment to third parties.

Shortly after the filing, on November 6, 2006, Tools filed a motion for an order authorizing the interim use of cash collateral and granting replacement liens (the "Cash Collateral Motion"). Through the Cash Collateral Motion, Tools sought authority to use cash collateral, including the rents generated by the Equipment, for general operating expenses in accordance with an operating budget. On November 8, 2006, the Court entered an order granting such authority (the "Cash Collateral Order"). Through various extensions and amendments, the Cash Collateral Order remained in effect through the effective date of the confirmed plan. As adequate protection of the secured positions held by the numerous equipment lenders, the Cash Collateral Order granted the "Equipment Lenders," which included Wells Fargo, "[a] continuing post-petition replacement lien and security interest ("Replacement Lien") in the equipment and rental contracts in which they held validly perfected liens and security interests as of the Petition Date." The Cash Collateral Order also provided as follows:

> As set forth in the Cash Collateral Budget, the Debtors[2] shall make monthly adequate protection payments to the Equipment Lenders . . . as to the specific equipment acquired pursuant to the Equipment Notes as defined in the Motion (the "Adequate Protection Payments"). These payments shall be a continuation of the Vendor Payment Plan [the IVP] that had been instituted by the Debtors pre-petition.

This provision obligated Tools "to make monthly adequate protection payments to the

---

[2] When Tools filed its bankruptcy petition, two affiliated entities also filed petitions, and their three cases were jointly administered. References to "Debtors" are to Tools and the two affiliated debtors.

3

Equipment Lenders," including Wells Fargo, according to amounts specified in a budget. Prior to confirmation of Tools' chapter 11 plan and pursuant to this provision of the Cash Collateral Order, Wells Fargo received payments from Tools totaling $256,580.71 ("Payments"). The Payments represented a portion of the net rental stream earned by Tools from its leasing of the Equipment to third parties.

Tools contends that the Cash Collateral Order establishes that "[t]he Payments were intended to provide adequate protection to equipment lenders to mitigate any potential diminution in the value of the equipment pursuant to the Bankruptcy Code." Although this inference may be drawn from the Cash Collateral Order, it is not the only possible inference.[3] It is also possible to infer that the Payments were intended at least in part as adequate protection to mitigate any potential diminution in the value of the Equipment Lenders' interests in the rents. This was a cash collateral order, issued on a motion for authority to use cash collateral, and the usual, if not exclusive, purpose of adequate protection in that context is to guard against diminution in the secured creditor's collateral value due to the debtor's use of *cash* collateral, in this instance the rents.

During the chapter 11 case and prior to confirmation of Tools' chapter 11 plan, Tools sold four pieces of the Equipment and remitted the net sale proceeds of $236,900.00 to Wells Fargo.

Tools filed its *First Modified Second Amended Plan of Reorganization* (hereinafter the "Plan") on or about September 24, 2007. In the Plan, Tools proposed a common treatment for each of the equipment lenders that the Plan had classified as Classes 2 through 13. In essence, the Plan provided for the equipment lenders' secured claims to be satisfied through either (i) a payment stream which would be paid over four years, (ii) the surrender of the property subject to a lien that Tools deemed unnecessary for use in its future operations

---

[3] This dispute over the inference to be drawn from the Cash Collateral Order as to its purpose is an issue of fact, but one that, in the final analysis, the Court concludes is not material to disposition of the motions before the court.

4

("Excess Collateral"), or (iii) a combination of the two. Wells Fargo's claim was classified as the Class 2 Claim. At the time the Plan was proposed, Tools was in possession of twenty-one pieces of Equipment. In full satisfaction of Wells Fargo's secured claim, Tools originally stated the intention of retaining eighteen pieces of the Equipment ("Retained Equipment") and surrendering three pieces of Equipment deemed "Excess Collateral." Tools valued that "Retained Equipment" at $1,152,000.00 and proposed to issue Wells Fargo a promissory note that would provide for payment of that amount over a period of four years, with interest. Wells Fargo voted to reject the Plan and objected to confirmation on numerous grounds. In resolution of Wells Fargo's objection, Tools modified the Plan to render Wells Fargo unimpaired. It did this by agreeing to classify all Wells Fargo Equipment as Excess Collateral; the Plan already provided that Excess Collateral would be surrendered to the Equipment Lender whose collateral it constituted.

On September 25, 2007, the Court confirmed Tools' First Modified Second Amended Plan of Reorganization. Upon entry of the Confirmation Order, the terms of the Plan became binding on Tools and its successors. October 9, 2007 was the effective date of the Plan (the "Effective Date").

In Paragraph 29 of the Confirmation Order—which paragraph is in the section of the order setting forth the rulings of law in support of confirmation—the Confirmation Order provides as follows:

> Based upon the evidence proffered, adduced, or presented by the Proponent at the Confirmation Hearing, the Plan (i) is fair and equitable with respect to the impaired nonaccepting Classes because, as set forth on the record of the Confirmation Hearing, WFC [Wells Fargo], the holder of the Class 2 - CIT Allowed Secured Claim, and the Debtor agreed that WFC shall receive all of its Collateral from the Debtor. Accordingly, Class 2 - CIT Allowed Secured Claim shall be satisfied in full and shall be deemed unimpaired; provided, that the Debtor shall make all such Collateral available for retrieval by WFC, or its agent, as provided for in Section 4.2(c)(i) of the Plan.

The defined term "Collateral" is found in Article 1.24 of the Plan, which states that "'Collateral'

5

shall mean any property or interest in property of the Estates subject to a Lien to secure the payment or performance of a Claim, which Lien is not subject to avoidance under the Bankruptcy Code or otherwise invalid under the Bankruptcy Code or applicable law." Furthermore, Article 1.63 of the Plan incorporates by reference the definition of lien found in §101(37) of the Bankruptcy Code, which provides that "lien means charge against or interest in property to secure payment of a debt or performance of an obligation."

The plaintiff, Tools, is the Reorganized Debtor for purposes of the Plan. With regard to the Equipment, under the Plan, Wells Fargo held the option of either permitting Tools to sell the Equipment in exchange for a fee equal to fifteen percent (15%) of the net proceeds of such sale or removing and disposing of the Equipment without Tools' assistance. Wells Fargo elected to remove the Equipment. Ultimately, upon motion of Wells Fargo, on November 1, 2007 the Bankruptcy Court entered an order mandating that Tools permit Wells Fargo to retrieve as much of the Equipment as was on Tools' premises by November 9, 2007, with the balance to be made available "promptly and on a reasonably expedited schedule." Wells Fargo retrieved the majority of the Equipment from Tools' premises on or about November 9, 2007. From the Effective Date through November 9, 2007, Tools realized rental income from the lease of at least fifteen pieces of Wells Fargo's Excess Collateral in the total amount of $17,650 ("Post-Confirmation Rents"). Tools has not remitted the Post-Confirmation Rents to Wells Fargo.

As reported to the Court on November 30, 2007, Wells Fargo sold fifteen (15) pieces of the Equipment at an auction, generating net proceeds of $779,068. The remaining six pieces of Equipment were returned to their manufacturer, Pettibone/Traverse Lift, LLC ("Pettibone"), generating proceeds of $484,411.63 for such transfer (exclusive of reimbursement for attorneys' fees). In total, Wells Fargo received net funds totaling $1,500,379.63[4] from

---

[4] In the statement of agreed facts that they incorporated into their pretrial memorandum, the parties agree that the sum is $1,500,380.30, but this amount is not the sum of three component amounts, which they also agree upon. The Court will use the sum of the components; the 67 cent discrepancy is de minimis.

6

disposition of the Wells Fargo Equipment during the case—$236,900.00 from the preconfirmation sale of equipment, $779,068 from the postconfirmation sale of equipment, and $484,411.63 for equipment returned to Pettibone—and an additional $256,580.71 under the Cash Collateral Order, for a total of $1,756,961 ("Net Proceeds").[5]

Tools asks the Court to determine that it is uncontroverted that, "as of the Petition Date, Tools valued the Wells Fargo Equipment in its possession at $1,520,000." As authority for this proposition, it cites paragraph 24 of the Agreed Facts section of their joint pretrial memorandum, but the paragraph in question does not support this determination (and in fact is entirely unrelated). More importantly, Tools has adduced no evidence or admission of any kind to establish the value of the Equipment as of the commencement of the case.

On or about January 3, 2008, Wells Fargo filed an amended proof of claim, asserting an unsecured deficiency claim of $388,197.29, which sum represents the $2,145,158.38 total debt owed to Wells Fargo as of the Petition Date less the Net Proceeds. The time within which to object to that claim has expired, no objection was filed, and therefore, that claim is an allowed claim.

After confirmation of the Plan, Tools filed the complaint commencing this adversary proceeding. By the complaint, Tools seeks to recover from Wells Fargo both (i) the payments totaling $256,580.71 that it made to Wells Fargo during the chapter 11 case as "adequate protection" payments and (ii) $87,130.00 of the proceeds Wells Fargo received from liquidation of the Equipment that Tools turned over to Wells Fargo pursuant to the confirmed plan. Both demands are predicated on Tools' allegation that the Equipment had a value as of the commencement of the bankruptcy case of only $1,520,000. Wells Fargo filed an answer in which it asserts, among other defenses, the affirmative defense of res judicata. With its answer,

---

[5] This total was not received all at once but over time. No one has submitted evidence of the present value, as of the date of the commencement of the bankruptcy case, of the stream of payments that yield this total. In our still inflationary economy, the amount is manifestly less than the simple total received. The Court cannot determine how much less.

7

Wells Fargo also asserts a counterclaim for breach of contract (the "contract" being the confirmed plan) and recovery of rents earned by Tools on Wells Fargo's Equipment after confirmation.

The adversary proceeding is before the Court on Well's Fargo's motion for summary judgment and on Tools' cross-motion for summary judgment. In support of its motion, Wells Fargo relies principally on the argument that the relief sought in the complaint is barred by the doctrine of res judicata: that the matter has been decided preclusively by the Confirmation Order and the plan it confirms. In the alternative, Wells Fargo argues that Tools cannot prevail because the payments in question were made with Wells Fargo's rents, which were themselves collateral, and therefore Wells Fargo cannot have received more than the value of its collateral; rather, everything it has received—the payments (made from rents that were part of Wells Fargo's collateral), the turned-over Equipment, and the proceeds of liquidated Equipment—has been its collateral. Wells Fargo also seeks summary judgment as to its counterclaim.

**Standard of Proof on Summary Judgment**

A party is entitled to summary judgment only upon a showing that there is no genuine issue of material fact and that, on the uncontroverted facts, the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). Where the burden of proof at trial would fall on the party seeking summary judgment, that party must support its motion with evidence—in the form of affidavits, admissions, depositions, answers to interrogatories, and the like—as to each essential element of its cause of action. The evidence must be such as would permit the movant at trial to withstand a motion for directed verdict under FED. R. CIV. P. 50(a). *Anderson v Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). If the motion is properly supported, the burden shifts to the adverse party to submit evidence demonstrating the existence of a genuine issue as to at least one material fact. If the adverse party does not so respond, "summary judgment, if appropriate, shall be entered against the adverse party." FED. R. CIV. P. 56(e); *Jaroma v.*

*Massey*, 873 F.2d 17, 20 (1st Cir. 1989).

**<u>Tools' Motion for Summary Judgment</u>**

Under Tools' theory of the case, Wells Fargo must return all value that it received over and above the value that the collateral had at the commencement of the bankruptcy case, a value that Tools fixes at $1,520,000. I need not belabor the details of Tools' argument or pass on its merits. It is sufficient to note that, even if Tools' theory were valid, Tools could not prevail on it without establishing that the value of Wells Fargo's collateral as of the date of the bankruptcy filing. Insofar as Tools seeks to recover from Wells Fargo value that was paid and turned over to Wells Fargo pursuant to the confirmed plan and the Cash Collateral Order, Tools bears the burden of proof as to value, but Tools has submitted no evidence of value at all. Having failed to adduce evidence as to this necessary element of its case, Tools cannot prevail on its own motion for summary judgment.

**<u>Wells Fargo's Motion for Summary Judgment as to the Complaint</u>**

Though Wells Fargo is the defendant and does not bear the burden of proof as to Tools' cause of action, it seeks summary judgment on the basis of an affirmative defense, the doctrine of res judicata, also known as claim preclusion, and therefore bears the burden of adducing evidence in support of that defense. Accordingly, to prevail on its motion, Wells Fargo must adduce evidence of the earlier final order, the Confirmation Order, and of the plan it confirmed to establish that the order in question is preclusive as to Tools' claims in this adversary proceeding. The agreed evidentiary record includes the Confirmation Order and everything needed to determine that it entered and what it adjudicated.

As the order for which Wells Fargo seeks preclusive effect is an order of a federal court, federal preclusion principles apply. *Monarch Life Ins. Co. v. Ropes & Gray*, 65 F.3d 973, 978 (1st Cir. 1995). "The essential elements of claim preclusion are: (1) a final judgment on the

9

merits in an earlier action; (2) an identity of parties or privies in the two suits; and (3) an identity of the cause of action in both suits." *Grella v. Salem Five Cent Savings Bank*, 42 F.3d 26, 30 (1st Cir. 1994). Once these elements are established, claim preclusion "bars the relitigation of any issue that was, or *might have been,* raised in respect to the subject matter of the prior litigation." *Id*.

Here there is no genuine issue of material fact as to the finality of the earlier action: the Confirmation Order is final, binding, and not subject to appeal. Nor is it controverted that the parties to the present proceeding, Wells Fargo and the Debtor, were parties as well to the plan confirmation proceeding and especially to the dispute in that proceeding over the proposed treatment of Wells Fargo's secured claim. These matters are not subject to dispute. At most, there may be a dispute[6] as to the identity between the matters decided in the confirmation proceeding and the claims being advanced here, but there are no genuine issues as to the facts material to the question of identity, and the parties do not contend otherwise. The dispute over the question of identity is entirely one of law.

Were the claims that Tools now advances among those that were or might have been adjudicated by the Confirmation Order? The Court must answer that question as to each of the two claims that Tools is now advancing. The first is that Wells Fargo must return the adequate protection payments because those payments were made only to guard against diminution in the value of Wells Fargo's collateral during the case, but, Tools contends, that collateral suffered no diminution in value during the case. The second is that Wells Fargo should be required to remit to Tools both the adequate protection payments and an additional $87,130.00 in proceeds from the liquidation of its collateral, because these together resulted in Wells Fargo's receiving more than the amount that Wells Fargo should have received on account of its

---

[6] It is not clear whether there is a dispute as to identity because Tools does not address this issue directly; however, Tools clearly contemplates that the Confirmation Order, whose finality and validity Tools does not dispute, somehow leaves open the possibility of the claims Tools now asserts.

10

secured claim, which amount Tools contends should be the value of Wells Fargo's collateral as of the commencement of the bankruptcy case.

Both issues were among those that were decided by the Confirmation Order. In order to achieve confirmation of a chapter 11 plan of reorganization, a debtor or other plan proponent must propose a treatment for each secured claim against the assets of the bankruptcy estate; and, where a secured creditor objects, the proposed treatment must comport with the requirements of § 1129(b) of the Bankruptcy Code. See 11 U.S.C. § 1129(b)(1) and (2) (specifying requirements for confirmation over objection of an impaired class of secured claims that has not accepted the plan). By virtue of its security interest, Wells Fargo had a security interest in assets of the estate. Wells Fargo therefore had a secured claim, see 11 U.S.C. § 506(a), and Tools did indeed propose a treatment of that claim. Wells Fargo objected to that treatment, the matter was resolved by agreement, and the agreement was incorporated into the Confirmation Order. By the time the Confirmation Order entered, the Cash Collateral Order had long been entered, and the Debtor had made the now-disputed payments to Wells Fargo pursuant to that order. The adequate protection payments, by their nature, were payments on Wells Fargo's secured claim.[7] The Plan and Confirmation Order were required to and did determine what Wells Fargo was entitled to recover on account of its secured claim as of the date of confirmation. *In re Blake*, 2009 WL 4349787 (Bankr. D. Mass. 2009) (date of valuation of secured claim for confirmation purposes is date of confirmation, not date of bankruptcy filing). That is, insofar as the adequate protection payments may have been relevant to what Wells Fargo was entitled to receive for its secured claim, the Plan's treatment of the secured claim needed to take account of any payments that had been made on that claim as of the date of confirmation. The confirmed plan determined that Wells Fargo's secured claim would be satisfied by turnover of its collateral, a term that both parties agree included at least the

---

[7] Tools recognizes this when it argues that the adequate protection payments, in combination with the proceeds from the liquidation of Wells Fargo's equipment, resulted in Wells Fargo's receiving more for its secured claim than it was entitled to receive.

11

equipment (if not also the rents).  The Plan as confirmed did not also set a limit on the value of the equipment to be turned over; it did not say, for example, that Tools shall turnover all the equipment *up to but no more than the value of the equipment as of the petition date*.  Nor did is specify that, in view of the adequate protection payments that had already been made and credited toward Wells Fargo's secured claim, Tools was entitled to a credit or limitation on the value of the equipment that was to be turned over pursuant to the confirmed plan.  If Tools believed itself entitled to a limit on value, or to a credit on account of the adequate protection payments, the time to litigate those issues was during the confirmation proceedings.  In short, Tools is now arguing in both counts that Wells Fargo is entitled to less on account of its secured claim than, pursuant to the confirmed plan, Tools, pursuant to the Court's incorporation of Tools' own proposal into the Confirmation Order, was required to and did turnover to Wells Fargo.  The issues that Tools now raises are bound up in the question of what Wells Fargo was entitled to receive on account of its secured claim.  The claims now being advanced are therefore identical to those that were resolved by the Confirmation Order, which now precludes the relitigation of those issues.

**Wells Fargo's Motion for Summary Judgment as to its Counterclaim**

This leaves only Wells Fargo's Motion for Summary Judgment as to its counterclaim. The counterclaim states three counts.  In the first, Wells Fargo seeks damages for breach of the confirmation order by Tools' failure to permit Wells Fargo to retrieve its Equipment immediately after confirmation, for which Wells Fargo argues that it is entitled to damages in the amount (i) the attorneys fees expended to the attorneys fees and costs expended in obtaining prosecuting a motion to compel compliance and (ii) the rental proceeds earned with the detained equipment during the period of improper detention.  The second count is one for unjust enrichment, by which it seeks recovery of the rents earned during this period of improper detention.  The third count seeks an accounting of the rents generated from Tools' use of Wells Fargo's Equipment

after the effective date of the plan.

Wells Fargo seeks summary judgment as to the counterclaim, but in support of this portion of its motion, Wells Fargo makes no reference to any one of these counts; nor does it discuss their requirements or explain how they are satisfied. Neither the court nor the opposing party is required to guess at the contours of a movant's arguments. Where Wells Fargo has failed to brief its own motion, the motion must be denied as to the counterclaim. The Court will reinstate the pretrial order and set the counterclaim for trial.

### **ORDER**

For the reasons set forth above, the Court hereby grants the motion of Wells Fargo for summary judgment as to the Debtor's complaint, denies the same motion as to Wells Fargo's counterclaim, and denies the Debtor's motion for summary judgment.

Date: October 5, 2010

Frank J. Bailey
United States Bankruptcy Judge